

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| ANDREA G. BJORNESTAD, | \* | CIV 08-4105 |
| Plaintiff, | \* | |
| | \* | MEMORANDUM OPINION AND |
| vs. | \* | ORDER RE: MOTION TO |
| | \* | BIFURCATE CLAIMS AND |
| PROGRESSIVE NORTHERN | \* | STAY DISCOVERY |
| INSURANCE COMPANY, | \* | |
| Defendant. | \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before this Court is the motion of Defendant Progressive Northern Insurance Company (Progressive) bifurcate Plaintiff Andrea Bjornestad's breach of contract claim for additional underinsured motorist benefits from Plaintiff's claim for bad faith damages. In this motion Progressive also requests that this Court stay discovery on Plaintiff's bad faith claim until her contract claim for additional underinsured motorist coverage is resolved. Doc. 21. The Court has determined that resolution of these issues may be done by considering the briefs and is denying Progressive's request for oral argument on these matters.

## FACTUAL BACKGROUND

In December of 2005 Plaintiff was operating a vehicle in Sioux Falls, South Dakota, when Nycole Marie Hansen (Hansen) negligently operated her vehicle, causing it to collide with the vehicle being operated by Plaintiff. Progressive had issued an automobile liability insurance policy to Plaintiff, which policy was in effect at the time of the collision. The policy contained coverage for underinsured motorist (UIM) benefits with limits of $100,000. Plaintiff later negotiated a settlement of her claim against Hansen for Hansen's policy limits of $25,000. Progressive elected to not substitute its draft and allowed Plaintiff to settle with Hansen and Hansen's insurer for Hansen's policy limits of $25,000.. In addition, Progressive made payment of $5,000. to Plaintiff under the medical expense coverage of the policy, thereby exhausting medical expense limits.

Plaintiff then demanded Progressive tender the policy limits of her UIM policy of $100,000

minus the amount she recovered from Hansen, for a sum of $75,000. Progressive offered an additional $25,000 to Plaintiff. Plaintiff alleges that Progressive conditioned the payment of the additional $25,000 upon Plaintiff releasing any other claim that Plaintiff may have against Progressive. Plaintiff further alleges that she believes her damages exceed the amount offered by Progressive and that she requested that Progressive tender the amount which Progressive valued her case but that Progressive declined her request. Plaintiff then commenced suit against Progressive in the Second Judicial Circuit Court, Lincoln County, State of South Dakota, asserting claims for breach of contract regarding unpaid UIM benefits, for the tort of bad faith for failure to properly investigate, evaluate and review Plaintiff's claim, for attorney's fees, and for punitive damages on the bad faith claim. Progressive then removed the state court action to this Court.

ANALYSIS

FED. R. CIV. P. 42 (b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." District courts possess broad discretion to bifurcate issues for purposes of trial under this rule. In exercising this discretion, this Court should consider such factors as the preservation of constitutional rights, clarity, judicial economy, the likelihood of inconsistent results and possibilities for confusion. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1202 (8th Cir.1990): *Koch Fuels, Inc. v. Cargo of 13,000 Barrels of No. 2 Oil*, 704 F.2d 1038, 1042 (8th Cir.1983).

Progressive contends that bifurcation is proper in this case as Plaintiff's claim for additional underinsured benefits must first be resolved in her favor before she would be entitled to recover damages for bad faith and that bad faith claims do not accrue until a breach of the insurance contract is established. Progressive cites *Martin v. State Farm Mut. Auto. Ins. Co.*, 960 F.Supp. 233, 236 (D.Nev. 1997), a case in which the district court dismissed bad faith claim, for the proposition that a "majority of jurisdictions have held that a bad faith claim either does not exist or should be held in abeyance until there is a final resolution of the contractual coverage claim." In *Drennan v. Maryland Cas. Co.*, 366 F.Supp.2d 1002, 1005-1006 (D.Nev. 2005), the district court in Nevada reexamined the above pronouncement and explained that intervening authority undermined the persuasive authority of the *Martin case*. The district court in the *Drennan* case concluded that

Nevada law did not require a plaintiff to establish tortfeasor liability or the extent of damages as a matter of law prior to instituting a claim for bad faith for failure to pay a claim for underinsured motorist benefits. 366 F.Supp.2d at 1007.[1] The district court in the *Drennan* case concluded that dismissal of a bad faith complaint is not warranted if a Plaintiff in his or her Complaint alleges that the tortfeasor was uninsured, the extent of damages, and that the insurer failed to act in good faith when it refused to compensate the Plaintiffs. *Id.* In the case at hand there is no controlling authority holding that a bad faith claim either does not exist or should be held in abeyance until there is a final resolution of the insured's contractual coverage claim.

Progressive contends that bifurcation of the claims avoids prejudice to both parties. Progressive contends Plaintiff is able to gain access to Progressive's claims file "merely by alleging that Progressive acted in bad faith in handling her UIM claim," and thus the work product doctrine and the attorney-client privilege are effectively rendered inoperative by not bifurcating claims. Plaintiff contends that Progressive filed this motion to bifurcate in an effort to avoid compliance with this Court's June 4, 2009, Order (doc. 19) granting Plaintiff leave of court to submit additional Requests for Admissions and denying Progressive's Motion for Protective Order, and that Progressive has failed to show the requisite prejudice to support bifurcation of claims. Plaintiff also refers to the duty of honesty to the tribunal when drafting a complaint under S.D. Rule Prof. Conduct Rule 3.3 in dismissing Progressive's suggestion that if the Court allows discovery on bad faith simultaneously with discovery on a breach of contract claim, it will open the flood gates of unethical lawyers claiming without basis the tort of bad faith in order to see an insurer's claims manual.

---

[1]Although the district court in the *Drennan* case determined that the breach of contract claim should be bifurcated from the bad faith claim at trial, it determined that bifurcation of discovery was not warranted. The district court in *Drennan* explained:
> Joint discovery is more convenient to the parties and would further judicial economy. With joint discovery, the parties will be better informed with regard to settlement efforts. Moreover, any discovery disputes likely will pertain to both causes of action. Finally, joint discovery will expedite resolution of the entire matter by permitting the second trial, if necessary, to commence immediately after the first.

366 F.Supp.2d. at 1007.

In *Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir.2000), the Eighth Circuit Court of Appeals upheld this Court's denial of the insurer's motion to bifurcate under FED.R.CIV.P. 42(b) after determining that the insurer had not shown that the plaintiff's access to its claim files prejudiced its case. *Athey* was a case where the insured alleged breach of contract and bad faith based on the insurer's refusal to pay the insured's underinsured motorist claim. The Eighth Circuit in *Athey* observed that although evidence of conduct during settlement negotiations generally is inadmissible to prove a party's liability for the underlying claim, it may be admitted under FED. R. EVID. 408[2] "when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." The Eighth Circuit observed that under South Dakota law an insurer's refusal to enter into meaningful settlement negotiations and an insurer's attempt to condition the settlement of a breach of contract claim on the release of a bad faith claim support a claim of bad faith. *Athey*, 234 F.3d at 362 (citing *Harter v. Plains Ins. Co., Inc.*, 579 N.W.2d 625, 634 (S.D.1998); *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761(S.D.1994); and *Crabb v. Nat'l Indem. Co.*, 87 S.D. 222, 205 N.W.2d 633, 637 (1973)). The Eight Circuit then concluded that evidence of the insurer's conduct during the settlement conference was not inadmissible under Rule 408 because it was "offered for another purpose." *Athey*, 234 F.3d at 362.

Plaintiff has proffered evidence that Progressive's UIM claim file demonstrates an evaluation

---

[2]FED. R. EVID. 408 provides:
(a) Prohibited uses.--Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:
(1) furnishing or offering or promising to furnish--or accepting or offering or promising to accept--a valuable consideration in compromising or attempting to compromise the claim; and
(2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.
(b) Permitted uses.--This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution

4

range of $25,000 new money as the undisputed low end and $50,000 new money as the high end of Plaintiff's UIM claim. Plaintiff has also proffered evidence that Progressive later claimed that $25,000 represented a "disputed" value of a claim worth less than $25,000. This evidence is relevant to both the breach of contract and bad faith claims, and while the Court cannot anticipate all evidentiary concerns regarding this evidence, this evidence is admissible under Rule 408 with regard to both claims.

Progressive contends that trying the two claims together prejudices it by revealing information protected by the work-product and attorney-client privileges. Because the work-product protection is a creature of Rule 26(b)(3) of the Federal Rules of Civil Procedure, questions of work-product privilege are resolved according to federal law. *Brennan v. Western Nat. Mut. Ins. Co.*, 199 F.R.D. 660 (D.S.D.,2001). In a diversity action, questions of attorney-client privilege are resolved according to state law. *Baker v. General Motors Corp.*, 209 F.3d 1051, 1053 (8th Cir.2000). Progressive is required to meet its burden of providing a factual basis for asserting the privileges by producing a detailed privilege log stating the basis of the claimed privilege for each document in question. *See Rabushka ex rel. U.S. v. Crane Co.*,122 F.3d 559, 565 (8th Cir.1997). In its Reply Memorandum to Plaintiff's Supplemental Legal Memorandum (doc. 33)Progressive asserts it will be producing its privilege log as part of its responses to Plaintiff's discovery requests. As the case now stands, Progressive's claim file is discoverable, subject to its assertion of work product or attorney-client privileges through the submission of a proper privilege log and the Court's ruling as to particular objections. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400-404 (8th Cir. 1987). By proceeding in this manner, any prejudice to Progressive can be minimized, and bifurcation of the two causes of action for trial is not necessary.

Plaintiff is represented by the same law firm that represented her when she was negotiating settlement with Progressive and when the alleged acts occurred which are the basis of both the contract and bad faith causes of action. Plaintiff's counsel state that they do not contemplate testifying on the bad faith issue on behalf of Plaintiff, as they do not deem it necessary. They contend that all the facts on which Plaintiff will rely for the bad faith claim are contained within Plaintiff's UIM claim file at Progressive or within other documents which are subject to discovery. Plaintiff claims that because of the nature of this file Progressive is avoiding responding to Plaintiff's

Supplemental Requests for Admissions.

Progressive maintains that counsels' opinion that they do not believe their testimony at trial would be necessary is unavailing because the documents referenced to by Plaintiff have not been admitted into evidence and even if admissible these documents will require foundation testimony from her counsel. Progressive further maintains that Plaintiff and her counsel may later determine that it is necessary for her counsel to offer testimony, which would be prohibited by Rule 3.7 of the Rules of Professional Conduct, SDCL ch. 16-18 and state law. *See Jones v. S.D. Children's Home Soc'y*, 238 N.W.2d 677, 680 (S.D. 1976); S.D.C.L. § 19-1-3 [3]. Progressive also relies upon *Rumpza v. Donalar Enters.*, 581 N.W.2d 517, 524 (S.D. 1998), in which the South Dakota Supreme Court disapproved of counsel being allowed to participate in the preliminary stages of litigation and then being allowed to withdraw later, if necessary. This Court, likewise, maintains that if it is foreseeable that current counsel must testify as prohibited by S.D.C.L. § 19-1-3 in support of Plaintiff's bad faith claim, counsel should withdraw from representation. However, Progressive has not identified a specific evidentiary basis which would preclude Plaintiff from presenting her case without the testimony of counsel. *See Harter v. Plains Ins. Co., Inc.*, 579 N.W.2d 625, 631-632 (S.D. 1998)(not necessary to disqualify counsel involved in underlying negotiations in bad faith action where information is clearly obtainable elsewhere). The Court presumes that Plaintiff's counsel has considered the evidentiary concerns associated with proceeding as they have stated and have discussed the risks of the same with their client. Based upon the record before the Court, the Court cannot conclude that Plaintiff's counsel's intent to continue to represent Plaintiffs on both her claims creates prejudice requiring bifurcation of the causes of action for trial.

---

[3] S.D.C.L. § 19-1-3 provides:
> When an attorney is a witness for his client upon any trial except as to merely formal matters such as the attestation or custody of an instrument or the like, he shall not further participate in such trial. This section shall not apply when such attorney's testimony is offered in answer to evidence received on behalf of the other party and it shall appear to the satisfaction of the court that such attorney had no reason to anticipate the necessity of his being a witness. Neither shall this section apply to state's attorneys and the attorney general and their deputies when engaged in the discharge of official duties.

The parties disagree with regard to whether a jury can separate the evidence and law with regard to the two causes of action in this case. There is a presumption, however, that juries can and do follow instructions conscientiously and evaluate the evidence before them carefully. *See United States v. Delpit*, 94 F.3d 1134, 1144 (8th Cir. 1996).Given that presumption and the relatively few and straightforward issues presented in this case, the Court rejects Progressive's position that a properly instructed jury would be confused and unable to properly consider the separate causes of action.

While the Court is cognizant of the cases in which the courts have been receptive to bifurcating bad faith from contract causes of action, *see* COUCH ON INSURANCE § 246:5 (3d ed. 2000),other courts have determined that bifurcation is not appropriate in first-party bad faith actions against an insurer based on the facts presented. *See, e.g., Penford Corp. v. National Union Fire Ins. Co.*, 2009 WL 2030377 (N.D.Iowa July 13, 2009); *Hauck Holdings Columbia SC, LLC v. Target Corp.*, 2009 WL 1459562 (S.D.Ohio May 26, 2009). Not bifurcating the causes of action and discovery in the case at hand is strongly supported by the considerations of judicial economy, a timely resolution of all issues and the impact bifurcation would have on discovery. Those considerations are not outweighed by the expressed concerns of prejudice to the insurer. Given the facts and circumstances of this case, bifurcation of the causes of action and a stay of discovery on the bad faith cause of action is not warranted. Accordingly,

> IT IS ORDERED that the motion of Defendant Progressive Northern Insurance Company to bifurcate Plaintiff's breach of contract claim from the bad faith claim and to stay discovery on Plaintiff's bad faith claim (Doc. 21) is denied.

Dated this 20th day of August, 2009.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: Summa Wahu
DEPUTY

7