FILED
NOV 10 2010

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| ANDREA G. BJORNESTAD, | CIV 08-4105 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER ON MOTION FOR ATTORNEY FEES |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Pending before the Court is Plaintiff's Motion for Attorney Fees Pursuant to SDCL 58-12-3, doc. 110. Plaintiff Andrea Bjornestad ("Bjornestad") requests fees for services performed from September 27, 2007, through the last day of trial on September 1, 2010. The Affidavit of Stephanie R. Amiotte, counsel for Bjornestad, includes a statement of attorney fees incurred in asserting Bjornestad's successful breach of contract claim against Defendant for underinsured motorist benefits. Bjornestad is not seeking fees for services rendered in relation to her bad faith claim which resulted in a verdict for Defendant, and she has redacted the fees incurred for the bad faith claim from the statement of attorney fees. Bjornestad's brief in support of her motion fully explains the billing rates of each lawyer and paralegal who worked on the case, and the hours they spent on the breach of contract claim. Bjornestad requests fees for 218.55 hours in the amount of $43,130.75, plus tax in the amount of $2,587.85, for a total of $45,718.60. Defendant does not object to the amount of attorney fees requested by Bjornestad, but argues the jury's finding that Defendant did not act in bad faith precludes an attorney fee award in this case. For the following reasons, the Motion For Attorney Fees Pursuant to SDCL 58-12-3 will be granted.

## BACKGROUND

Bjornestad was insured by Progressive Northern Insurance Company ("Progressive"). She was injured in a motor vehicle accident on December 7, 2005. Approximately two months after the

accident, Bjornestad was diagnosed with a congenital anomaly in her low back which existed before the accident and complicated her recovery. Bjornestad eventually settled her bodily injury claim with the tortfeasor's insurance carrier for the policy limits of $25,000. On November 9, 2007, Bjornestad demanded payment of $100,000 from Progressive for underinsured motorist benefits. (The limits of Bjornestad's underinsured motorist coverage with Progressive are $100,000. After the tortfeasor's $25,000 payment, the maximum allowed under the Progressive policy for underinsured coverage is $75,000.)

On January 29, 2008, Progressive offered $25,000 to settle Bjornestad's underinsured motorist claim, plus a waiver of the $5,000 medical payment coverage. In exchange they wanted Bjornestad to release all of her claims against Progressive. After Bjornestad rejected the offer, Progressive hired Dr. Paul Cederberg to conduct an independent medical records review. Dr. Cederberg opined that Bjornestad had incurred a relatively minor neck strain from the accident, and that the accident did not contribute to, or aggravate, her congenital low back condition. Progressive re-offered the $25,000 to settle Bjornestad's personal injury claim, under the same terms as the earlier offer, and Bjornestad again rejected the offer. Progressive paid all of Bjornestad's medical bills related to the accident, but at no time did Progressive tender any money to Bjornestad for her personal injury claim. Bjornestad sued Progressive for bad faith and breach of contract in state court, and the action was removed to this Court on July 8, 2008, based on diversity jurisdiction. On September 1, 2010, after three days of trial, the jury found in favor of Bjornestad on her breach of contract claim, awarding $75,000 plus interest from January 29, 2008. The jury found in favor of Progressive on the bad faith claim.

## DISCUSSION

Bjornestad brings this motion pursuant to SDCL § 58-12-3. That statute states, in relevant part:

> In all actions ... commenced against any ... insurance company ... on any policy ... of insurance, if it appears from the evidence that such company ... has refused to pay the full amount of such loss, and that such refusal is vexatious *or* without reasonable cause, ... the trial court and the appellate court, shall, if judgment or an award is

2

rendered for plaintiff, allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as a part of the costs ...

SDCL § 58-12-3 (emphasis added). Before attorney's fees may be awarded under this section, the trial court must find three things: 1) that the insurance company refused to pay the full amount of the insured's loss; 2) that said refusal was either vexatious or without reasonable cause; and 3) the reasonable charge for the work performed to enforce the insurance contract claim "vis-a-vis any other claims jointly brought." *Biegler v. Am. Fam. Mut. Ins. Co.*, 621 N.W.2d 592, 606 (S.D. 2001). "The obvious objective of SDCL 58-12-3 is to discourage contesting insurance coverage and to reimburse an insured for any reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right." *All Nation Ins. Co. v. Brown*, 344 N.W.2d 493, 494 (S.D. 1984).

Progressive argues that the standard for awarding attorney fees under the statute is higher than the bad faith standard, and that the jury's rejection of Bjornestad's bad faith claim shows Progressive did not act vexatiously or without reasonable cause. Although whether Progressive acted in bad faith and whether Bjornestad is entitled to attorney fees raise similar issues, they are considered under different standards. To establish that Progressive was liable for bad faith, Bjornestad had to prove three elements:

> One, defendant did not have a reasonable basis for denying, delaying, or failing to reasonably investigate plaintiff's claim for underinsured motorist benefits;
> Two, defendant either knew it did not have a reasonable basis or acted recklessly in determining whether it had a reasonable basis for denying, delaying, or failing to reasonably investigate plaintiff's claim for underinsured motorist benefits; and
> Three, defendant's actions caused plaintiff to suffer loss or harm.

*See* CIV 08-4105, doc. 101 (Jury Instructions); South Dakota Pattern Jury Instruction Civil 30-20-20 (2008). All three elements had to be proved by Bjornestad by the greater convincing force of the evidence in order to prevail on the bad faith claim.[1] On the other hand, Bjornestad's attorney fee

---

[1] Bjornestad speculates the jury determined Progressive knew it did not have a reasonable basis or acted recklessly in determining whether it had a reasonable basis for denying, delaying, or failing to reasonably investigate Bjornestad's claim, but that Progressive's bad faith failure to pay

request is based on a South Dakota statute allowing fees where an insurance company vexatiously or without reasonable cause fails to pay the full amount of an insured's loss. Therefore, a determination that Progressive's failure to pay was not in bad faith does not necessarily answer whether Bjornestad is entitled to reimbursement of her legal fees. *See, e.g., Brooks v. Milbank Ins. Co.*, 605 N.W.2d 173 (S.D. 2000) (upholding trial court's award of attorney fees under SDCL 58-12-3 despite trial court's dismissal of bad faith claim, but also reversing dismissal of bad faith claim). Likewise, the fact that Bjornestad prevailed in recovering $75,000 on her breach of contract claim does not automatically entitle her to reimbursement of attorney fees in this case.

The Progressive claim specialist who handled and evaluated Bjornestad's claim, Loren Sedevie, testified at trial that he never spoke to Bjornestad's medical providers in order to evaluate the claim because they can be biased toward their patients. Mr. Sedevie valued Bjornestad's claim from $25,350 at the low end to $50,350 at the high end. Mr. Sedevie's supervisor, Dee Hoime, testified that she reviewed Mr. Sedevie's evaluation and never lowered the value he placed on it. The claim was never evaluated by anyone at Progressive at less than $25,350. Yet Mr. Sedevie was given authority to offer only $25,000, and he never offered to pay more than $25,000 to Bjornestad. Furthermore, when he offered to pay $25,000, Mr. Sedevie told counsel for Bjornestad that the actual claim value was less than $25,000.

Other evidence of Mr. Sedevie's vexatious or unreasonable refusal to pay the full value of Bjornestad's claim include Mr. Sedevie telling Dr. Cederberg in a letter that Bjornestad's low back complaints did not begin until February 14, 200. Dr. Cederberg ultimately opined that the low back problems were not related to the accident. After receiving Dr. Cederberg's opinion, Progressive re-offered $25,000 in exchange for a full and final release of all claims At trial, Mr. Sedevie admitted that his letter to Dr. Cederberg about when Bjornestad's low back pain began was wrong.

---

did not cause Bjornestad to suffer loss or harm under the third element. No special interrogatories were requested by the parties or submitted to the jury, so the Court is unaware whether the jurors found that Bjornestad failed to prove all or just one of the elements of bad faith.

4

In summary, the evidence shows that Progressive had knowledge of facts indicating that Bjornestad was entitled to more than $25,000 under her insurance contract, yet Mr. Sedevie and Progressive repeatedly offered only $25,000 while requesting a full and final release of all claims. Progressive intentionally represented to Bjornestad that her claim was worth less than $25,000 when its own records show that her claim was actually valued at no less than $25,350. Finally, there is evidence that Progressive provided false information to Dr. Cederberg about when Bjornestad's low back pain began.

Other than arguing that Bjornestad's claim for full underinsured motorist benefits was fairly debatable, there has been no explanation for handling Bjornestad's claim in this manner. At the time Progressive should have paid under its contract with Bjornestad, the facts did not justify Progressive's repeated attempts to force its insured to settle for less than the value of the claim in exchange for a full waiver of all claims by making false representations during settlement negotiations.[2] Based on the totality of the circumstances in this case, the Court finds Progressive's refusal to pay benefits due under the policy was at least without reasonable cause. *See, e.g., Firemen's Ins. Co. v. Bauer Dental Studio, Inc.*, 805 F.2d 324, 325 (8th Cir. 1986) (upholding district court's award of attorney fees under SDCL 58-12-3 finding of "vexatious conduct in the manner in which [the insurer] conducted the settlement negotiations"); *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 763 (S.D. 1994) ("State Farm delayed in investigation, settlement, and evaluation for years. They finally refused to unconditionally pay amounts due and owing under the policy without a dismissal of the bad faith claim and this conduct clearly falls within the 'without reasonable cause and vexatious standard' of SDCL 58-12-3.").

---

[2]"Under South Dakota law, an insurer's attempt to condition settlement of a breach of contract claim on the release of a bad faith claim may be used as evidence of bad faith." *Athey v. Farmers Ins. Exchange*, 234 F.3d 357, 362 (8th Cir. 2000). In its brief opposing attorney fees in this case, Progressive argues it presented evidence that "no such improper conditional release was ever made." Progressive employees testified that no written release ever was given to Bjornestad for her signature, but both times Bjornestad was offered $25,000 she was told by Progressive that the offer was contingent on a release of all claims against Progressive.

Each hour spent on the breach of contract claim by Bjornestad's lawyers was documented for the Court's review. Fees related to the bad faith claim were excluded by counsel for Bjornestad. Progressive does not object to the amount of fees requested. After careful review, the Court finds that the rates charged and the hours claimed for pursuing Bjornestad's breach of contract claim are reasonable. Accordingly,

IT IS ORDERED that Plaintiff Andrea Bjornestad's Motion for Attorney Fees Pursuant to SDCL 58-12-3, doc. 110, is granted, and Defendant Progressive Northern Insurance Company shall pay Bjornestad $45,718.60 for attorney fees incurred in pursuing Bjornestad's breach of contract claim against Defendant.

Dated this 10th day of November, 2010.

BY THE COURT:

John B. Jones
United States Senior Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: Summer Wahus
DEPUTY